UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

NOEL P. ADIA,

                       Plaintiff,

     -against-

GRANDEUR MANAGEMENT, INC. and
RAJA I. YOUNAS,

                   Defendants.

------------------------------------X

A P P E A R A N C E S:

17 Civ. 9349 (RWS)

OPINION

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED 9/10/18

       Attorneys for Plaintiff

       LAW OFFICE OF FELIX Q. VINLUAN
       69-10 Roosevelt Avenue, 2nd Floor
       Woodside, NY 11377
       By:  Felix Q. Vinluan, Esq.

       Attorneys for Defendants

       LAW OFFICES OF NOLAN KLEIN, P.A.
       39 Broadway, Suite 2250
       New York, NY 10006
       By:  Nolan Klein, Esq.

**Sweet, D.J.**

Defendants Grandeur Management, Inc. ("Grandeur") and Raja I. Younas ("Younas") (collectively, the "Defendants") have moved to dismiss the Complaint of the plaintiff Noel P. Adia ("Adia" or the "Plaintiff") pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). The Plaintiff has cross-moved to amend the Complaint. The cross-motion of the Plaintiff to amend the Complaint by the additional allegations in paragraphs 28-44 is granted. The motion of the Defendants to dismiss the Complaint as amended is granted.

## I. **Facts & Prior Proceedings**

Adia filed the Complaint on November 29, 2017 alleging that the Defendants fraudulently recruited him to work as an H-2B guest worker and forced him to work overtime through threats of lack of immigration status, loss of work, and false provisions of sponsorship in violation of the Trafficking Violations Protection Act, 18 U.S.C. § 1589.90 ("TVPA"), the Alien Tort Statute, 28 U.S.C. § 1350, ("ATS"), and New York Labor Law, Article 19 §§ 650 et seq. ("NYLL"). Compl. ¶¶ 1-2.

2

The Complaint sets forth the following allegations.
Adia is a Philippine citizen who entered the United States with
a H-2B visa as a temporary guest worker. Compl. ¶ 7. Grandeur is
a South Carolina corporation with principal offices in Myrtle
Beach, South Carolina, and is a hotel services provider engaged
in laundry, linen, housekeeping, and maintenance business.
Compl. ¶¶ 8-9. Younas is a South Carolina resident, and owner or
president or manager of Grandeur. Compl. ¶¶ 10-11. The
Defendants were the employers of Adia and determined the place
of Adia's employment, the terms of his employment, and
supervised his work. Compl. ¶¶ 12-14.

Defendants instructed Plaintiff to coordinate with a
New York cleaning service company for employment; monitored
Plaintiff's employment service record and paid for his services
at Staybridge Hotel through their payroll company. Compl. ¶¶ 28-
31. Younas advised Plaintiff that he had caused the filing of an
application to change Adia's H-2B status to B1/B2 status. Compl.
¶ 32. Younas sent Plaintiff a copy of the USCIS notice
acknowledging receipt of the application to change Adia's status
to B1/B2 status and promised Plaintiff that he could ensure that
Adia did not become unlawfully present in the country, and that
he would eventually file another H-2B petition and then an H-1B
petition on behalf of Plaintiff. Compl. ¶¶ 33-35.

3

Younas advised Plaintiff to rely on him and to promise him not to look for other employment as Defendants would ensure Plaintiff's immigration status to be in order at all times. Compl. ¶ 36. Younas transferred Plaintiff from Staybridge Hotel to work at Hotel Indigo in Chelsea/28th Street area of Manhattan as a doorman, and Defendants paid Plaintiff $9.00 an hour through another management company controlled and/or owned by Younas. Compl. ¶¶ 38-39. Younas stated that the continuation of Plaintiff's immigration status would depend on Plaintiff's continuing reliance on Defendants and on Plaintiff being in their good graces. Compl. ¶¶ 37-41. In February 2012, Plaintiff inquired for evidence regarding the filing of his H-1B sponsorship, and Younas admitted that he had not filed any H-1B petition for Adia. Compl. ¶¶ 43-44.

Defendants moved to dismiss on jurisdictional grounds and for failure to state a cause of action, Plaintiff in opposition in effect cross-moved to add additional allegations to paragraphs 38-44 relating to jurisdiction. The motions were heard and marked fully submitted on May 2, 2018.

4

## II.   **The Motion of the Plaintiff to Amend the Complaint is Granted**

Although the procedural niceties to amend a pleading were not met, the amendments set forth in Plaintiff's Response in Opposition at pages 3-5 constitute geographical details to prior allegations. In the interests of expedition, the cross-motion to amend ¶¶ 28-44 is granted.

## III.   **The Motion of the Defendants to Dismiss on Jurisdictional Grounds is Denied**

According to the Defendants, the Plaintiff has failed to adequately allege jurisdiction over Grandeur, a South Carolina corporation and Younas, a South Carolina resident. Whether or not the allegations can be established factually, as set forth above, Adia has alleged that the Defendants are employers of Adia under New York law, and paid, supervised, and controlled his employment in New York. *See* Compl. ¶¶ 12-14. The allegations are sufficient to allege jurisdiction. The motion to dismiss on jurisdictional grounds is denied at this time with leave granted to renew.

**IV.  The Motion of the Defendants to Dismiss for Violations of the TVPA and ATS is Granted**

On a Rule 12(b)(6) motion to dismiss, all factual allegations in the complaint are accepted as true and all inferences are drawn in favor of the pleader. *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir. 1993). A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663 (quoting *Twombly*, 550 U.S. at 556). In other words, the factual allegations must "possess enough heft to show that the pleader is entitled to relief." *Twombly*, 550 U.S. at 557 (internal quotation marks omitted).

While "a plaintiff may plead facts alleged upon information and belief 'where the belief is based on factual information that makes the inference of culpability plausible,' such allegations must be 'accompanied by a statement of the facts upon which the belief is founded.'" *Munoz-Nagel v. Guess,*

6

*Inc.*, No. 12 Civ. 1312 (ER), 2013 WL 1809772, at *3 (S.D.N.Y. Apr. 30, 2013) (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)); *Prince v. Madison Square Garden*, 427 F. Supp. 2d 372, 384 (S.D.N.Y. 2006); *Williams v. Calderoni*, 11 Civ. 3020 (CM), 2012 WL 691832, at *7 (S.D.N.Y. Mar. 1, 2012)). The pleadings, however, "must contain something more than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Twombly*, 550 U.S. at 555 (citation and internal quotation omitted).

In considering a motion to dismiss, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

The Defendants urge that the corporate Defendant is immune from liability under the TVPA as a matter of law, citing *Mohamad v. Palestinian Authority*, 566 U.S. 449, 451 (2012), which holds that "the term 'individual' as used in the [TVPA] encompasses only natural persons. Consequently, the Act does not impose liability against organizations.'" *See also Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 617 (S.D.N.Y. 2012) (noting that "the Supreme Court unanimously held that the term

'individual,' as used in the TVPA, 'encompasses only natural persons.'").

As to Younas,

The TVPA enables individuals who are victims of forced labor or trafficking to file a civil action against the perpetrators in district court. 18 U.S.C. §§ 1589, 1590, 1595. "Forced labor," within the meaning of the statute, includes coercion through abuse or threatened abuse of the law or legal process, or threats of serious financial or reputational harm, such that "a reasonable person of the same background and in the same circumstances" as the victim would be coerced "to perform or to continue performing labor or services in order to avoid incurring that harm." 18 U.S.C. § 1589. Under the statute, "trafficking" includes the knowing recruitment of any person for forced labor. 18 U.S.C. § 1590(a).

*Macolor v. Libiran*, No. 14 Civ. 4555 (JMF) (RLE), 2016 WL 1488121, at *4 (S.D.N.Y. Mar. 25, 2016), adopted by *Macolor v. Libiran*, No. 14 Civ. 4555 (JMF), 2016 WL 1453039 (S.D.N.Y. Apr. 13, 2016).

In *Macolor*, the plaintiff alleged that he was brought to the United States under false pretenses and was threatened with costly legal action if he stopped working for the defendants. *Macolor v. Libiran*, 2016 WL 1488121, at *1. Here, the Plaintiff had already been present in the United States for an unspecified amount of time, and had visa status before he ever spoke to Younas. Compl. ¶ 15.

8

Plaintiff's claim of forced labor appears to be based on his subjective feeling that he could not pester Younas about his visa status, or he might risk having sponsorship withdrawn. The Complaint as amended does not allege a threat to terminate sponsorship or deportation. Indeed, "not all bad employer-employee relationships . . . will constitute forced labor . . . . Congress intended to address serious trafficking, or cases where traffickers threaten harm to third persons, restrain their victims without physical violence or injury, or threaten dire consequences by means other than overt violence." *Garnica v. Edwards*, 72 F. Supp. 3d 411, 416 (S.D.N.Y. 2014) (quoting *United States v. Dann*, 652 F.3d 1160, 1170 (9th Cir. 2011)). "[C]ourts have held that wage underpayments do not violate the Forced Labor Statute because violating a labor regulation is not considered an abuse of law or process under the statute." *Id.* at 415. Plaintiff has failed to state a claim for forced labor under the TVPA against either Defendant.

Moreover, Plaintiff's claim of human trafficking under the TVPA is simply a restatement of his forced labor claim under the same statute. Plaintiff alleges that Defendants "recruited, harbored, and transported" him for the purpose of subjecting him to forced labor. However, the Plaintiff was already lawfully present in this country. There are no allegations that

Defendants "transported" Plaintiff to New York or anywhere else;
rather Plaintiff admits that he traveled here himself.
Plaintiff's human trafficking claim thus fails. *See e.g.,
Aguirre v. Best Care Agency, Inc.*, 961 F. Supp. 2d 427, 447
(E.D.N.Y. 2013) (internal citations omitted) ("Plaintiff has
failed to demonstrate or explain how Defendants recruited,
harbored, provided or obtained her services, a necessary element
to prove trafficking under this statute. Without this element,
Plaintiff's trafficking claim under this statute is nothing more
than her forced labor claim restated."). Plaintiff's TVPA claims
are hereby dismissed.

The Plaintiff has also failed to state a claim under
the ATS. First, as with the TVPA, there is no corporate
liability under the ATS. *See Licci by Licci v. Lebanese Canadian
Bank, SAL*, 834 F.3d 201, 219 (2d Cir. 2016) (holding that
corporations are immunized from liability under the ATS). Thus,
Plaintiff's claim against the corporate Defendants is dismissed.

Moreover, as to the merits, the allegations in the
Complaint fall short of what is required to state a claim under
the ATS. "[B]ecause ATS jurisdiction depends on a violation of a
law of nations, 'a more searching preliminary review of the
merits' is required than the review conducted for asserting

10

jurisdiction under the 'arising under' grant of federal
jurisdiction under 28 U.S.C. § 1331." *Velez v. Sanchez*, 693 F.3d
308, 316 (2d Cir. 2012) (citing *Filartiga v. Pena-Irala*, 630
F.2d 876, 887 (2d Cir. 1980)).

      Plaintiff fails to allege any facts that could
reasonably be construed as a violation of the law of nations.
"To demonstrate a violation of the law of nations, a plaintiff
must prove a violation of international law norms that (1) are
norms of 'international character' that nations abide by out of
a sense of legal obligation; (2) are 'defined with a specificity
comparable to the 18th-century paradigms . . .'; and (3) are 'of
mutual concern' to nations." *Id.* at 319 (citing *Abdullahi v.
Pfizer, Inc.*, 562 F.3d 163, 174 (2d Cir. 2009). "[T]he
international definition of forced labor (as formulated in the
international instruments described above) does not cover 'low
wages or poor working conditions,' . . . . It also does not
include 'situations of pure economic necessity' caused by a lack
of employment alternatives . . . . [F]orced labor must involve a
'severe violation of human rights and restriction of human
freedom." *Id.* at 321 (internal citation omitted).

      Moreover, "the ATS has always been understood as
covering torts committed abroad." *Velez v. Sanchez*, 754 F. Supp.

11

2d 488, 496 (E.D.N.Y. 2010); *see also Sosa v. Alvarez-Machain*,
524 U.S. 692, 715 (2004) (defining law of nations as, *inter
alia*, "a body of judge-made law regulating the conduct of
individuals situated outside domestic boundaries and
consequently carrying an international savor"). "Although no
case holds that the ATS covers only torts occurring abroad, the
Court is confident as a matter of first impression, that Velez's
claims of domestic human trafficking and forced labor are not
within *Filartiga*'s conception of the statute's grant of
jurisdiction." *Velez*, 754 F. Supp. 2d at 496-97. So too here.
Accordingly, jurisdiction does not lie as to either Defendant
lies under the ATS.

Even if, *arguendo*, the ATS had conferred jurisdiction
over such claims, Plaintiff has not alleged claims for forced
labor or human trafficking. "Decisions in which ATS forced labor
claims have been permitted to proceed have typically involved
egregious violations of human dignity." *Velez*, 693 F.3d at 321;
*see e.g.*, *Licea v. Curacao Drydock Co.*, 584 F. Supp. 2d 1355,
1361-63 (S.D. Fla. 2008) (describing how plaintiffs were held in
captivity; how they suffered severe injuries due to the nature
of their work but were denied medical treatment; and how in
escaping, they risked imprisonment and death and the persecution
of their families by the Cuban government); *Doe I v. Reddy*, No.

12

C 02-05570, 2003 WL 23893010, at *9 (N.D. Cal. Aug. 4, 2003)
(finding that allegations sufficed both to provide jurisdiction
and state claims for forced labor, debt bondage, and trafficking
under the ATS when they included 'coercive conduct through
threats, physical beatings, sexual battery, fraud and unlawful
substandard working conditions'); *Manliguez v. Joseph*, 226 F.
Supp. 2d 377, 381-82 (E.D.N.Y. 2002) (describing how the
plaintiff was often locked in the apartment in which she
provided domestic labor, was prohibited from interacting with
others, denied medications and basic personal effects, and was
often given only one meal per day).

Here, Plaintiff worked for different employers miles
away from Defendants, and was paid in excess of the minimum
wage. The employment of Adia as a housekeeping attendant and
doorman cannot be construed as forced labor in light of the
above.

Moreover, trafficking under the ATS has also not been
adequately alleged. Trafficking in this context is defined as:

> the recruitment, transportation, transfer, harbouring
> or receipt of persons, by means of the threat or use
> of force or other forms of coercion, of abduction, of
> fraud, of deception, of the abuse of power or of a
> position of vulnerability or of the giving or
> receiving of payments or benefits to achieve the
> consent of a person having control over another

13

person, for the purpose of exploitation. Exploitation shall include, at a minimum, the exploitation of the prostitution of others or other forms of sexual exploitation, forced labour or services, slavery or practices similar to slavery, servitude or the removal of organs.

*Velez*, 693 F.3d at 323.

The Complaint does not adequately allege that Plaintiff was recruited, transported, or harbored, let alone trafficked. According to Plaintiff, he was already lawfully present and working in the U.S. when he freely traveled from South Dakota to South Carolina, by way of New York. After many months during which Defendants could not procure any work for Plaintiff in South Carolina, Younas allegedly suggested that Plaintiff contact an employer in New York. Plaintiff traveled from South Carolina to New York and "got himself interviewed," and obtained employment in New York through his own efforts.

Accordingly, the Defendants' motion to dismiss the alleged violations of the TVPA and ATS is granted.

## V.  **Supplemental Jurisdiction is Declined**

As the Supreme Court noted in *United Mine Workers v. Gibbs*, 383 U.S. 715, "[w]hether to retain jurisdiction over

14

pendent state law claims is within a trial court's discretion, 'not a matter of plaintiff's right.'" *Jordan (Bermuda) Inv. Co., Ltd. v. Hunter Green Investments Ltd.*, 154 F. Supp. 2d 682, 695 (S.D.N.Y. 2001) (quoting *Gibbs*, 383 U.S. at 726).

Having dismissed the federal claims, supplemental jurisdiction over Plaintiff's remaining state claims is declined. *See, e.g.*, *Tops Markets, Inc. v. Quality Markets, Inc.*, 142 F.3d 90, 102-03 (2d Cir. 1998) (emphasis in original) ("[W]hen all federal claims are eliminated in the early stages of litigation, the balance of factors generally favors declining to exercise pendent jurisdiction over remaining state law claims and dismissing them *without* prejudice."); *Jordan (Bermuda) Inv. Co.*, 154 F. Supp. 2d 695-96 (declining to exercise pendent jurisdiction over state claims after granting defendants' motion to dismiss federal claims).

Accordingly, Plaintiff's New York Labor Law claim is dismissed without prejudice for lack of jurisdiction.

15

## VI.   Conclusion

For the foregoing reasons, the Plaintiff's cross-motion to amend the Complaint is granted, and the Defendants' motion to dismiss the Complaint is granted.

It is so ordered.

New York, NY
September 6, 2018

_____
ROBERT W. SWEET
U.S.D.J.

16